Good morning, Your Honors. Good morning. Good morning, Mr. Salvini and Mr. Shroff. Good morning. May it please the Court, my name is Tom Gilbertson. I am counsel to the defendant, appellant, GC Services. With me today, as they were on the brief, John Lestrange and Timothy Vanden Heuvel. And if I may, I'd like to reserve five minutes for rebuttal. I will help you, but keep an eye on the clock. Thank you, Your Honor. So judging from all of the reported decisions, it seems that almost every class certification appeal involves a dispute about whether there are individual fact issues that make class treatment of the underlying dispute appropriate. Well, this was decided pre-Walmart, correct? Yes, it was. The certification was pre-Walmart. And Walmart spoke quite specifically to, I think, commonality and its relationship to predominance. So I guess the issue here then is, and we have to look at, you know, that from the standpoint. So the district court didn't have the advantage of that. So in my view, well, under the class certification, if any one of them is not present, then it can't be certified. And commonality, I think, is, in my view, is probably the most at the center of it. Why is this deficient regarding commonality after Walmart from your perspective? And if that were the case, or should we just send it back to the district court to do an analysis under Walmart? Your Honor, I don't believe that we should remand, and I don't believe there's any need for that because of the nature of the record here. And I don't think that decision certifying these disputes as a class is really within the permissible range of decisions. The reason this case cannot square with the Dukes case, and I would also contend, Your Honor, that even before Dukes, this decision was an abuse of discretion under existing Ninth Circuit and Supreme Court law. But even after Dukes, where commonality was clarified as an issue that not only raises a common question, but has a common answer that drives the litigation to a resolution, that's probably the predominance aspect of it, that driving the case to a resolution. There's one common issue, one, that's identified by the plaintiffs on their motion for class certification, and that's whether there's this policy. But the policy itself, as articulated by the plaintiffs, has often changed. At one point, and this was the case when we were up here before back in 2008, Thomas and one, where the policy was pitched as, gee, GC services, they like to get these debtors on the phone, and they want to hang on to them on the phone so that they can press them for payments, so that they can pump them for more information. Now, that was a summary judgment, though, right? And then the prior panel said there was a triable issue on that, because the plaintiffs put forth a different theory of what was happening on the phone than what you said the policy was or was not. Sure. Yes, Your Honor. So that was one articulation of the policy, and then at other times you see the plaintiffs articulating the policy as GC services never discloses its monitoring practices to debtors. But truly, the FDCPA claim that they're making, and it's a very narrow claim, and it's a rather esoteric and novel claim, is under 1692e, and it is trying to shoehorn this alleged policy into what the statute provides, which is that it is unlawful to engage in any deceptive or misleading attempts to collect a debt or obtain information about a consumer. And we've cited these cases in our brief. I think it's at page 33. Not every communication that a debt collector has with a debtor collapses into an attempt to collect a debt or obtain information about a consumer. And, in fact, in the cases we've cited, and I think it's footnote 8, describe from the case law a number of different FDCPA cases that failed on that basis, because the communication that was alleged did not ultimately involve an attempt to collect a debt, you know, demanding payment terms, demanding payment, or an attempt to obtain new information about the consumer. Is there a dispute on do you have the incoming calls and then the outgoing calls, right? Yes, we do. And on incoming calls, the practice is different between those two calls, those two types of calls. Because when the debtor calls in, you have to, before you can even talk to them, your answer would be you have to ascertain that it is, in fact, the debtor before you can even have a conversation. Yes, but also on inbound calls, we answer, the debt collection offices answer the call with the disclosure. They say, good morning, GC services, this call may be monitored for quality control purposes. And it's much easier to do that, as you may appreciate, with an inbound call versus an outbound call, where if I called John Lestrange, he picks up the phone, hi, you know, the Lestrange residence, it would be a very awkward and meaningless way to start the conversation by saying, hi, this call may be monitored for quality control purposes. John's question would be, by whom? You know, it's a meaningless disclosure. And as we pointed out in our briefs, these calls, you know, they don't, they're not scripted calls, okay, but there are rules that apply to them. And the rules are some express provisions in the FDCPA that prohibit a debt collector from talking with a debtor and not disclosing who we are and that we're a debt collector. And that's often called the mini Miranda. There's a long, you know, body of case law that goes to those express provisions of the FDCPA. And I cannot disclose to some third party that I'm trying to contact a debtor about the debt. So these debt collection professionals, they are trained and they're charged by the FDCPA when they make these outbound calls to first identify who has answered this phone. Is it the debtor? I need to confirm that. And what the testimony is from all the different managers that the Plaintiffs' Council deposed and, you know, a former manager that the plaintiffs brought forward in this sort of disgruntled former employee mode, Mr. Bond, they all testified that to this, you know, overarching need to identify the debtor. And each debt collector, though, based on what they have on the screen before them, the information that they have available to confirm with whoever answered the phone, the interaction that goes on then with whoever answered the phone, they may be able to confirm that it's the debtor by simply saying, you know, hi, is this Joe Smith? Yes, it is. 124 Maple Street. Yes. This is GC Services. And, you know, we're calling about a debt, and this call may be monitored. Well, okay, so after Dukes, there's an F&B law offices, that case, where they found that the commonality was met. And that was where a letter was sent to employers. A letter, yes, Your Honor. To employers of debtors. And so the commonality was that the answer would be this, whether sending a letter to employers of debtors violates the FCPA, right? So you don't have to talk to each of the debtors to ascertain that, because you have one letter that went to all of the debtors. So if you don't have one answer, give me more than one answer. What are the more than one answers, or why are you going to have to talk to every debtor, and one would, and then I guess the commonality gets into the predominance, too. Right. I think I understand, Your Honor. And Judge Houston, indeed, understood this as well. This is why the order at page 5 expressly acknowledges that there's going to be a clear need to identify each class member's call and the contents of that call, not just the status of the call, but its contents, to determine if an advisement was given, and more importantly, when. The when relates to the issues I just articulated. These are the issues put in play by the plaintiff's FDCPA theory. The FDCPA liability will attach only if there's a communication that involves an attempt to collect a debt. Where's the money? You know, when can you pay? Or an attempt to obtain new information about the consumer. Where do you work? I don't have that. So the individual factual dispute that defeats commonality is there's no question that the company had a policy that the QMD had to be given, but the problem is we're going to have to make an individual inquiry as to each call with each putative class member as to whether, in fact, it was given. And when. Right. When during the conversation. Right. And whether consent. And these calls were not recorded. No, they were not. So what evidence would the court have to look at? Or to put it differently, what evidence would be available to assist the court in resolving the question? Well, in the case of these 412, you know, these are 412 people who link up to monitoring sheets that we produced in discovery. And these are notes made by the GC services employee? Yeah, the supervisor, Your Honor. So in the course of training debt collectors, this is where a lot of the supervision takes place. They're handling inbound calls, outbound calls. They're giving the advisement. They're giving the mini Miranda. And they are, you know, moving forward with the telephone calls and whatever, you know, needs to be addressed in these calls. And I'll emphasize again, it does not always involve an attempt to collect a debt or obtain new information. So there's the form, and it has, you know, different items, and they're scored. And if there's a failure to give the QMD, that is noted on the form. So that is some of the evidence for those 412. Well, what about would there be commonality here if we were to determine that as a matter of law, failure to provide the QMD at the commencement of the phone call was a deceptive practice under the FDCPA? In other words, assuming that just for the sake of argument, that the FDCPA requires your company to immediately give a QMD on any outgoing call, would the commonality requirement for class certification be met under that hypothetical? I don't believe it would, Your Honor. And, of course, the FDCPA does not provide that, and that's not the policy and the claim that plaintiffs are making. I know that. I know that's not the hypothetical. But if that were the hypothetical, could there possibly be commonality? I think we would still need to explore each call to determine when that advisement was given. My hypothetical was saying the FDCPA required giving it at the beginning. But there's also the bona fide error defense under the FDCPA. So if there had been a failure in a certain instance where something fell through the cracks, we would be able to address that. You've got about 2 minutes and 45 seconds remaining. This is really the rare case, though. Which includes your rebuttal time. Which includes any time you want to save for rebuttal. So I have 2 minutes and 35 seconds. That's what I was trying to get at. If you want any rebuttal, sit down. Very good. Thank you, Your Honor. I'll be up later. Okay. Let's go with it. May it please the Court. Good morning. I'm Christopher Saldana, and today with me is Robert Shroth, Jr., and we've together a counsel for the plaintiffs' appellees. I'm going to respond as concisely as I can to Mr. Gilbertson's arguments in relation to what I think the Court has identified as the two major issues here, which are commonality and predominance. In our view, the characterization of the evidence as it relates to a showing of commonality is not correctly put before the Court by the defendants in that our view. Why don't you tell me what the gist of the class complaint is? The gist of the class complaint is that under 1592-1690, I'm sorry, 15 U.S.C. 1692-E-10, it is a violation of the Federal Fair Debt Collection Practices Act to solicit from an individual, in this case a consumer, information that reveals, for example, location information, address information, personal information in general. It's a violation of the FDCPA to do that by means of a false or deceptive practice. As we see it, the Ninth Circuit. What would the common answer to that be, though? It still seems like you'd have to go through every single call. I think the common question initially, and then the common answer under Dukes, is that were a class of people, in this case the 412 plus the two plaintiffs, were that class of people injured in the same way as Justice Scalia requires or the Court requires in Dukes? Were they injured in the same way? An injury in this case would be a violation of their privacy by means of a false or deceptive practice, which this Court in a previous panel, Thomas and Juan, said was a violation of the law. But the false and deceptive practice is the failure to give the QMD. That's correct. That's correct. And let's talk about the fact that we have your two clients and then 412 others. As I understand the record, they didn't show up on the list of 412 people that GC says we monitored. That too is correct, Your Honor. So why are they appropriate representatives of the class of 412? Their testimony is that they suffered from the same injury. In other words, that they phoned the company, that the company failed to provide them the QMD, and that they, as a result, provided personal information. So it doesn't matter whether or not they were actually monitored? Well, I think it does. The question is whether or not. Well, there's no evidence that they were. Well, the evidence is their testimony. Now, whether. . . They don't know whether they were monitored. They can only know whether they were given the disclosure. All the evidence with regard to monitoring suggests that they were not monitored. They weren't on the list. What they were told by representatives of GC services was that their calls were likely being monitored and could be recorded. And that was after they inquired. That's not the question I asked. I asked did it matter whether they were actually monitored. That they were told they might be monitored doesn't answer the first question. I think it does matter. I think it does not matter for purposes of class certification whether we can prove at this time that they were actually monitored. Well, that just invites the superiority questions raised by the defendant. Because you're taking a class now limited to people who were monitored, who were actually monitored, except the class representative who has no evidence whatsoever that he and she were actually monitored. Well, they have evidence that they were told they were being monitored. Whether or not that evidence is sufficient to get past the goalie, so to speak, in the form of a jury, that's anybody's call. They represent a different class than the 412, a much more expansive class that would presumably include the thousands of people that engage in telephone conversations. One of the objections of defendants is that you've defined a class that's supposed to be failure-proof. You've defined a class that isn't superior because it leaves lots of people out of the class. You're telling me the class representatives actually represent a class of thousands, not a class of 412, because they're not part of the 412. So how is this a superior mechanism? Well, what I'm telling you is that through the process of discovery, the defendants were asked to produce a bevy of information, some of which they did and some of which they didn't. In response to a request for admission, they essentially admitted that, okay, if we're acting as a third-party debt collector, which is a debt collector under the FDCPA, an individual who qualifies as a debt collector contacted a certain number of individuals. In this case, the question was, was it 200 or more? That's a request for admission 10. It's in the record. The corollary to that was a request for production saying, hey, if you have any documents identifying who these people are, provide them. Let me shorten this. Is your class limited to people who are actually monitored, or should it be? Our class is limited to the people who are identified by GC services and haven't been monitored. The 412. And your clients are not members, don't fit that description. Our clients fit that description in that they have evidence that they were told they were being monitored. Are they on the list? No. Haven't we been through that already? Isn't that something different? Is there any evidence whatsoever that your clients were actually monitored? Is there any evidence whatsoever? Again, I would fall back to the same response, which is that the only evidence we have is their testimony that they were told that. And that's not the same thing, is it? Because thousands of people were told that their conversations might be monitored. That's the whole point of it. If what the court is searching for is for me to say are they on the list of 412, the answer to that question is no. So how can they be representatives of that class? Because I think an evidentiary admission by a GC services representative is the same in function and form as a representation or admission through discovery. It's admissible for the same purpose. Did you basically put all the evidence on in front of the district court that you would put on if this matter were remanded to the district court to consider Walmart? I mean, is all the evidence already there? I would argue that it is. The question would be, you know, if the district court is in the short. Well, if you argue that it is, then there's no reason that we can't make the decision on the record here because it's a legal matter. That may be functionally correct. The problem is that the plaintiffs have not had the opportunity at this point to provide to the district court any argument or really to this court any argument on Dukes because Dukes was decided after briefing was concluded in this case. But that's not the question. But you're making those arguments here. I mean, you're having an opportunity to do that. The question is would there be any other evidence? Is all the evidence there? I believe that it is. I cannot commit to you 100% that that is the case, but my belief is that that's true. If that's the case, then how do you square your 18 affidavits with the concern the Supreme Court had with the 120 affidavits in Dukes as not being sufficient in order to establish a company-wide policy? I think that when you parse out Dukes, okay, what that portion of Justice Scalia's opinion states essentially is this, that in general telephone company versus Falcon, we have a situation where there are effectively 340-some-odd affected plaintiffs who suffer from discrimination as a result of the practices of the defendant. And the question is, is that sufficient enough to demonstrate a policy and or practice or both of discrimination in that particular case? And what the court in that particular case said was that, yes, that's enough. What Justice Scalia did was say, hey, that makes sense, but what we can't do is allow a situation where there's 120 affidavits or so as evidence probative or sufficient to allow the establishment of a policy or practice in relation to a million people over the entire nation in disparate offices where managerial discretion is the key to the determination of whether or not somebody is fired or demoted or any of those things. So I think that it's factually more analogous, in this case it is, to Falcon than it is to Dukes in that sense because we have 18 people out of a hundred and, I'm sorry, 412. So we're closer statistically to that than we are to Dukes I think by an order of magnitude. It's still, I mean, from a statistical significance standpoint, it's a very small subset. And see, here's the issue. And in response to Judge Callahan's question, the reason I can't tell you for certain that, yes, we have all the information that we would put in the record at this stage is because, frankly, it's always possible for trial counsel to go back and say, hey, you know, let's get some more declarations, get some more affidavits, let's talk to these people a little bit more. Should we vacate and remand and let the district court do that in light of Dukes? Our view is that there's not an abuse of discretion below. I don't believe, although the district court did say at ER-5 that an individualized inquiry is necessary, our view is that based on the discovery responses and what we have in terms of policy and practice affidavits that it's not in fact required. But if the court is inclined to determine that that's an incorrect view of the ---- What evidence do we have on policy or practice? Excuse me? What evidence do we have with regard to policy or practice? The affidavits, the same as we did in Falcon, the same as we do in Dukes. The question is, are those affidavits sufficient from a percentage standpoint to get to the other side of the ---- What's on the defense side of the ledger? I mean, the point of Walmart is you've got to do a pretty thorough analysis. So we have on one side, what was the number of affidavits again? On our side, 18. Against statements by all the employees of defendant stating what their policy is, a policy which is inconsistent with what your affidavits report actually happened to those people. Right. Right. And I think the issue is we have a dispute of fact. And the trial court looked at that dispute of fact and said, I believe that the plaintiffs can make their showing based upon what they have. And so the ---- But this was prior to Walmart's pretty firm statement that we don't pick and choose like that. Well, but the Third Circuit in Barron, which we cited in the case, and Barron was later reviewed on cert by the Supreme Court, said that when you have a factual dispute like that, you have to demonstrate a showing of clear error in interpretation of the facts in order to reverse. And so the question then becomes, did the Supreme Court challenge that analysis in its review on cert? And it didn't. In fact, in footnote 5 of Barron versus ---- Clear error if you're applying the right law. And you acknowledge the district court's decision here is pre-Walmart. So do we know that the district courts made the same decision that it would make in light of Walmart? I mean, you're arguing for affirmance here because there's no clear error. Well, now the rules have changed, at least some, and the district court didn't have the benefit of Walmart. And so can we really ---- is the possibility of affirming really there? I think that it is in the sense that the information that we have provided in the record is sufficient to, I think, countervail what the defendants posit of its policy is. Well, we do think. Do we know what the district court would think? Well, we know that the district court made that call. The question is whether it would change under Dukes. And, again, in reading the ---- Dukes was kind of a game changer, huh? Well, Dukes does change the analysis to some extent. But I think that based on the information in the record that you have before you, the same result would be compelled given the district court's determination that the two positions are sufficiently countervailing based on their substance that the plaintiffs could move forward on class certification. But the state of the record at this point is 18 affidavits out of 412 in comparison to the sworn testimony of GC managers that the QMD warnings were given and a written policy to that effect. And what I would note on that, Your Honor, is that the issue for us is that the testimony of Bernadine Crisp, who is the trainer of these GC services managers, was that I train these folks to give the QMD when they do it to do it after they've asked for address information, various other things. So they say to establish who it is that you're talking to. I don't disagree. I'm sorry. I disagree with my opponent's interpretation of 1692E10 in that I think Judge Callahan's hypothetical is closer to the reality than otherwise, which is to say that if you don't give it at the outset of the call, then you're violating the law. But that wasn't your theory. It is. And it has been. But we have to do your theory. You didn't say my hypothetical. Well, no. I recited what I thought was a fairly concise summary of what the deal was. Well, I have to take you on face value of what your theory is. I mean, you're the lawyer, of course. Well, it's the same theory. The question is timing. And the timing issue is in response to their question. But they can't be right because they're not allowed to talk to third parties about somebody else's debt. So they're going to have to at least elicit enough information from a caller that it is, in fact, a debtor before they. . . How is that any different for an outbound call, though? It's really the same analysis. It is different from an outbound call because, presumably, they're operating off of whatever information they have on the computer screen, whereas a cold call coming in, they have no idea who's on the other end of the line. They're going to have to ask a few questions. And, again, if it turns out that your summary of the policy is the correct one and that, in fact, the policy . . . Well, that's what the policy says, isn't it? I'm sorry. The practice. I'm sorry. I misspoke. The practice is, in fact, that. Then I think that, you know, in one fell swoop, all of the questions are answered and plaintiffs lose at trial. But the question is . . . . . . calls to find out if the QMD was given and, if so, when. Our response is that the QMD isn't given based on our affidavits and that if you take at face value that the policy is, in fact, also the practice as elicited by GC services testimony, that that still is a violation of the law. And that we . . . And in that, we rely on Thomas and Warren. Although it's not explicitly stated, we believe that it is. We implicitly acknowledge that that is a viable theory. Well, would your case be better if you had 412 affidavits? Would it be better? No. In terms of class certification, I think that it would be factually dissimilar from what it is now. Now, if the court decides, for example, okay, you know, 5 percent, which is roughly what we have, of the class is insufficient. We really need 12 percent or 20 percent. Then, yes, we would get 10 percent or 20 percent of affidavits of the affected individuals as identified by GC services and provide those to the district court. I don't think 412 is necessary under Rule 406. I don't think that the objection was made below. I think that, frankly, that question is way . . . Okay, but that's different than my question. Would your case be better if you had 412? No, not in a representative action. I respectfully, you know, would submit to you that . . . Because you're saying that if you were told that the number you have isn't enough, then you'd get a higher percentage. So it seems to me, what am I missing here? Well, a higher percentage meaning if we have insufficient information or insufficient evidence in terms of the number of affidavits as it relates to a percentage of the class as a whole under the Falcon and Duke's analysis . . . If you had 412, you'd have 100 percent, right? We would. We would. So wouldn't that be better? Why isn't the answer to her question yes? Well, again, I would respectfully submit that that is not the case, that we don't need that. No? Well, I think the question is . . . No. Would it be better to have 100 percent? Well, yes. Absolutely yes. Yes. Okay. I would agree with that. I don't understand why you're fighting. I agree with that. I think I misinterpreted the question to mean . . . Do we have to delve into individual issues as to all 412 individuals? And my response to that would be no. But yes, from an empirical standpoint. Your time has expired. Thank you very much. Thank you. I think we've got a little rebuttal time left, Mr. Gilbertson. Thank you, Your Honor. The reason this case should be reversed and not remanded is because in the order, the trial court acknowledges that these individual fact issues require examination in each case. And it was the law before Dukes that that prevented class certification. I understand the impact of Dukes is strong, and it makes this case a no-brainer. But I would invite the Court to look back at the 23F petition that we filed before Dukes came down in February of 2011, the Valentino case, Your Honor's Benolli case, the Zinsser case. There were many Ninth Circuit cases and Supreme Court cases that counseled against certifying a 23B3 class when the key elements, the key fact elements for the claim alleged are going to require case-by-case examination. I guess the question is, though, would the class look exactly, if we remanded it, would it look exactly the same as it looks right now? I don't think there's any further room for refinement. You know, this case has been around for seven years. And when it started, it was pled as a nationwide class, as a California-only class. For everybody who had ever talked on the phone about a debt in various states of owing, I mean, there have been a lot of theories tossed around. It got really winnowed down our first trip up here. And after Judge Burns issued summary judgment across the board, we came up here in 2008. The SEPA claims were dismissed. There is no invasion of privacy that arises from these actions. That's because a corporation is one of the parties on the phone, and there's no eavesdropping going on by definition when a corporation listens to its own call. And, you know, this is a consumer-friendly practice that's being attacked here. This turns consumer protection law on its head to attack a practice of a business having its supervisors get on the horn with its call center operatives and its debt collectors and supervise what they're doing. So there's no invasion of privacy involved. In the class, there's no further room to distill this thing. It's been distilled down to this very narrow, esoteric, novel FDCPA theory. It's a creature of the plaintiff's counsel. And Your Honor's hypothetical, I think the hypothetical that you posed, if the FDCPA mandated that the disclosure be given at the outset, if there was that sort of express provision, then the law indeed would sort of be handing the commonality issue to the plaintiffs. So it's significant to note that that's not what the FDCPA does. There's 1692E10 theory that Mr. Saldana detailed for Your Honors. It requires that the communication and it can, you know, it's a catch-all provision. And it says, show us a practice and we'll decide whether it's deceptive or misleading if it involves, you know, an attempt to collect the debt or gain information about a consumer. So that has to happen in the call. That's why Judge Houston correctly recognized that he had to examine the contents of these calls case by case. That remains the case. And remanding it, it cannot change the equation. These 17 declarations, they were never produced in discovery. As we've said in the briefing and one of the grounds that we objected to them below, they were withheld by counsel, submitted in opposition to our motion for summary judgment. They're just assembly line, you know, wrote fill-in-the-blank declarations. Some of the people forgot to fill in the blanks. But if you had a 412 of them, that's not a class action. That's a mass action of 412 cases that require individual inquiry. And we would have the due process rights to cross-examine each one of those people. We have eight managers who were deposed in this case by the plaintiff's counsel. We could bring those managers in and, based on the records that we have on each of them, dispute what they're saying. In the same way that the named plaintiff's case presents a variety of disputes, it would be true for the rest of them. I think the named plaintiff's. Mr. Giberson, your time has expired. I think we have your arguments well in mind. Thank you both. The case just argued is submitted. Thank you, Your Honor. We are adjourned for the day.
judges: Tallman, Clifton, Callahan